EFFRON, Judge
(dissenting):
I agree "with the majority opinion that the military judge erred in excluding the exculpatory portions of Private (PV2) New’s testimony about appellant’s admissions. I respectfully dissent, however, from the majority opinion’s conclusion that the error was harmless.
I. THE PRETRIAL STATEMENT AND EVIDENCE OF DURESS
Appellant was charged with participating with Private First Class (PFC) Taori Ransom in a variety of crimes against Ms. CM, including rape, kidnapping, and forcible sodomy. Appellant and PFC Ransom were placed in pretrial confinement, where they met PV2 New. Prior to appellant’s trial, PV2 New informed law enforcement personnel that he and appellant had discussed the charges against appellant. PV2 New provided a sworn, written statement relating his conversation with appellant, which includes the following:
Benton told me that he and Ransom were driving around when they saw two girls in Woodbrook and they were going to “mack on them.” I understood “mack” to mean sex or something.... Ransom got out of the car, and Benton said he saw Ransom hit one of the females on the head with a gun. Ransom then pushed the girl in the car. Benton said Ransom put the gun to his (Benton’s) head and said “drive, drive, go,” or words to that effect.
Benton said he pulled over to the side of the road; Ransom did not tell him to stop. Benton said he pulled into a dead end and turned the car around. According to Benton all three people ... got out of the car. Ransom told the girl to “hook my boy up,” or words to that effect. Benton told me that the female victim began to undo his (Benton’s) pants and was going to perform oral sex on him, then he changed his mind and pulled his pants up.
According to New, Benton also told him he saw Ransom have oral sex, sexual intercourse, and anal sex with the victim.
II. THE INCOMPLETE STATEMENT AND MISLEADING PRESENTATION OP THE PRETRIAL STATEMENT AT TRIAL
At trial, PV2 New testified as a witness for the prosecution. The prosecution used New’s testimony to introduce appellant’s out-of-court statements as evidence of appellant’s participation in the charged offenses. During the direct examination, the prosecution elicited the substance of New’s entire pretrial statement regarding his discussion with ap *33 pellant, with one major exception. Trial counsel carefully avoided any questions about New’s pretrial assertion that, according to his conversation with appellant, Ransom had placed a gun to appellant’s head when Ransom returned to the car with Ms. CM. Despite omitting that critical element of his pretrial statement, PV2 New told the court-martial that appellant had told him “everything” about the incident.
On cross-examination, defense counsel sought to elicit that portion of New’s pretrial statement describing Ransom placing a gun to appellant’s head. Trial counsel objected, asserting that the question called for inadmissible hearsay. Defense counsel countered that the statement was admissible under the rale of completeness. The military judge sustained the objection and precluded the testimony.
Appellant subsequently testified. The critical point of his testimony was that he was coerced into committing the offenses as a result of Ransom placing a gun to his head. He also denied that he had made any statement to PV2 New. In light of appellant’s testimony that he was coerced by Ransom placing a gun at his head, the military judge instructed the members on the defense of duress. See RCM 916(h), Manual for Courts-Martial, United States (1998 ed.).
The members returned a mixed verdict, convicting appellant of several offenses and acquitting him of several offenses. On direct review, the Court of Criminal Appeals held that the military judge erred by precluding New from testifying as to that portion of his statement recounting appellant’s description of Ransom placing a gun to his head. The court, however, concluded that the error was harmless, a view that has been adopted in the majority opinion.
III. THE PREJUDICIAL IMPACT OF THE MILITARY JUDGE’S ERRONEOUS RULING
The majority opinion offers three grounds in support of the proposition that the error was harmless. First, the majority opinion contends that the error was harmless because appellant was allowed to present his defense—duress—through other evidence. The purpose of the rale of completeness, however, goes beyond allowing an accused to introduce exculpatory statements. The purpose is to ensure that the factfinders are not misled as to the nature and quality of the accused’s statement. Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 171-72 n. 14, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)
In the present case, the members were misled. The problem with PV2 New’s in-court testimony is that it created the erroneous impression that appellant had told New “everything” about the incident—and that “everything” amounted to an unqualified, inculpatory statement. In that form, New’s testimony undercut appellant’s in-court testimony by making appellant’s in-court statement regarding duress appear to be a recent fabrication.
The essence of the defense contention on appeal is not that New’s complete testimony was needed to establish the defense of duress. The issue raised by the defense is that the incomplete nature of New’s testimony contradicted appellant’s in-court testimony. As the Supreme Court has emphasized, the rale of completeness is designed to ensure “that the court not be misled because portions of a statement are taken out of context” and to avoid “the danger that an out-of-context statement may create such prejudice that it is impossible to repair by a subsequent presentation of additional material.” Id.
The majority opinion also contends that the error was harmless because there was not much corroborative value in the fact that appellant’s in-court testimony was the same as the statement he made to another person in confinement shortly after the crime. The critical problem, as noted above, was not the absence of corroborative testimony. The problem was that appellant’s in-court testimony was undercut by the glaring difference between his testimony at trial—raising the defense of duress—and New’s selective testimony about appellant’s pretrial statement— leaving the impression that there was no such coercion.
*34 The majority opinion further contends that the error was harmless because when appellant denied making any statement to New, his position “largely minimized” any value of the excluded testimony. 57 MJ at 29. The majority opinion suggests that appellant created a “dilemma” by arguing both that the evidence was needed to complete his statement to New and that he made no such statement. The problem in this ease was not created by the defense, but by the prosecution’s misleading and incomplete account of the pretrial statement.
This is not a ease of the defense affirmatively seeking to introduce an exculpatory pretrial statement into the trial as part of the defense ease-in-chief. New’s testimony was interjected into the trial by the prosecution, not the defense. The decision to present New’s recollection in a selective rather than a comprehensive manner was made by the prosecution, not the defense. The ruling of the military judge was prejudicial to appellant’s right to have the members assess the credibility of appellant’s duress. The ruling allowed the prosecution to present an incomplete, misleading account of appellant’s pretrial statement, an account which left the impression that appellant had changed his stray prior to trial.
It is also noteworthy that the prosecution’s presentation was far from compelling, as evidenced by the fact that the panel members did not accept the prosecution’s primary theory of the case. The prosecution’s theory was that appellant and Ransom planned and executed the attack on CM. The members, however, acquitted appellant of all the specifications involving vicarious liability for the acts of PFC Ransom, as well as the specification involving conspiracy. He was convicted only of the offenses to which the duress defense was most directly applicable—kidnapping and forcible sodomy.
The ruling of the military judge meant that the evidence which the members took into the deliberation room consisted of conflicting testimony between the victim and appellant, and what appeared to be a complete and unqualified pretrial confession by appellant to his cellmate. The members were left with the impression that appellant had never told anyone prior to trial that PFC Ransom had pointed the gun at him. The members easily could have concluded that appellant concocted this story in preparation for trial in order to create a defense. Under these circumstances, the error was prejudicial.